IN THE

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

Docket No. 10-56852

BRADFORD COLEMAN, an individual,
and on behalf of other members of the class and other aggrieved employees,
*Plaintiff-Appellee*,

v.

ESTES EXPRESS LINES, A VIRGINIA CORPORATION, ET AL.,
*Defendants-Appellants*.

ON APPEAL OF AN ORDER OF REMAND
FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

**APPELLEE'S OPENING BRIEF**

INITIATIVE LEGAL GROUP APC
DARREL MENTHE (SBN 186252)
MARK P. ESTRELLA (SBN 187091)
DAVID M. MEDBY (SBN 227401)
SUE J. KIM (SBN 256392)
1800 CENTURY PARK EAST, SECOND FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310.556.5637
FACSIMILE: 310.861.9051

*Attorneys for Plaintiff-Appellee*
BRADFORD COLEMAN

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF ISSUES .....................................................................1

STATEMENT OF THE CASE.................................................................1

STATEMENT OF FACTS ......................................................................3

SUMMARY OF ARGUMENT ................................................................6

STANDARD OF REVIEW ...................................................................12

ARGUMENT ......................................................................................12

I.    REMOVAL STATUTES SHOULD BE CONSTRUED
NARROWLY WITH FOCUS ON THE
ALLEGATIONS IN THE PLEADINGS .......................................12

II.   ANALYSIS OF THE DEFENDANTS' RELATIVE
ABILITY TO PAY A JUDGMENT IS NOT
INDICATED BY THE STATUTORY TEXT ................................15

III.  THIS COURT SHOULD FOLLOW THE TENTH
CIRCUIT'S ANALYSIS IN HOLDING THAT
EXTRINSIC EVIDENCE OF ABILITY OF A LOCAL
DEFENDANT TO PAY A JUDGMENT IS NOT
RELEVANT TO THE APPLICABILITY OF THE
LOCAL CONTROVERSY EXCEPTION ...................................18

IV.  APPELLANTS' INTERPRETATION IS NOT
SUPPORTED BY THE LEGISLATIVE HISTORY ....................21

V.   CALIFORNIA LAW PRECLUDES A CORPORATION
PIERCING ITS OWN CORPORATE VEIL TO EVADE
JURISDICTION IN CALIFORNIA COURTS............................24

i

VI.   REGARDLESS OF THE STATUTORY
      INTERPRETATION ADOPTED, THIS COURT
      SHOULD AFFIRM BECAUSE ESTES WEST IS NOT
      A PERIPHERAL DEFENDANT ................................................................27

CONCLUSION ........................................................................................29

CERTIFICATE OF COMPLIANCE .......................................................30

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006) ..................................12, 13

*Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924 (9th Cir. 2003)...................................................................................................12

*Beeman v. TDI Managed Care Servs.*, 449 F.3d 1035 (9th Cir. 2006)...................................................................................................12

*Boise Cascade Corp. v. United States EPA*, 942 F.2d 1427 (9th Cir. 1991) ........................................................................................13

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) .............................................10

*Citizens United v. FEC*, 130 S. Ct. 876 (U.S. 2010) ................................................24

*Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240 (10th Cir. 2009)...............................................................................*passim*

*Coleman v. Estes Express Lines, Inc.*, No. 10-80152, 2010 U.S. App. LEXIS 24434 , __ F.3d.___ (9th Cir. Nov. 30, 2010) ................................6

*Disenos Artisticos E Industriales, S.A. v. Costco Wholesale Corp.*, 97 F.3d 377 (9th Cir. 1996) .......................................................................25

*Evans v. Walter Indus.*, 449 F.3d 1159 (11th Cir. 2006)........................................20

*Flynt Distributing Co. v. Harvey*, 734 F.2d 1389 (9th Cir. 1984)..........................27

*Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir. 1992) ...................................................13

*Green v. SuperShuttle Int'l, Inc.*, No. 09-2129, 2010 U.S. Dist. LEXIS 7456 (D. Minn. Jan. 29, 2010)........................................................18, 20

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003).................................................................................10

*Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689 (9th Cir. 2005)...................................................................................................14

*Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277 (11th Cir. 2001)............................................................................26

*Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994 (9th Cir. 2007)........................................................14

*Lowery v. Ala. Power Co.*, 483 F.3d 1184 (11th Cir. 2007)....................................12

*Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986) .........................................................................8

*Pan Am. Petroleum Corp. v. Superior Court of Del.*, 366 U.S. 656 (1961) ..........................................................13

*Powell v. Tosh*, Case No. 5:09-CV-000121, 2009 U.S. Dist. LEXIS 98564 (W.D. Ky. Oct. 21, 2009) .........................................................18

*R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932 (9th Cir. 2007)............................................................................12

*Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301 (S.D.N.Y. 2003) ................................................24

*Robinson v. Cheetah Transp.*, No. 06-0005, 2006 U.S. Dist. LEXIS 10129 (W.D. La. Feb. 27, 2006)..................................*passim*

*Rotenberg v. Brain Research Labs LLC*, No. C-09-2914, 2009 U.S. Dist. LEXIS 91335 (N.D. Cal. Sept. 15, 2009) .........................................18

*Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398 (9th Cir. 1996)............................................................................15

*Schnabel v. Lui*, 302 F.3d 1023 (9th Cir. 2002) ................................15

*Serrano v. 180 Connect, Inc.*, 478 F.3d 1018 (9th Cir. 2007) ................................16

*United Continental Tuna Corp. v. United States*, 550 F.2d 569 (9th Cir. Cal. 1977) ..........................................................25

*United Steel v. Shell Oil Co.*, 602 F.3d 1087 (9th Cir. 2010) ................................10

**STATE CASES**

*Mesler v. Bragg Management Co.*, 39 Cal. 3d 290 (1985)......................................26

*Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523
    (2000) ........................................................................................................26

**FEDERAL STATUTES**

28 U.S.C. § 1332(d)(3).........................................................................16, 17

28 U.S.C. § 1332(d)(3)(D) .......................................................................16

28 U.S.C. § 1332(d)(3)(F)........................................................................16

28 U.S.C. § 1332(d)(4)(A) .......................................................................16

28 U.S.C. § 1332(d)(4)(A)(i)(I) ...............................................................9

28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa).............................................*passim*

28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb) ............................................*passim*

28 U.S.C. § 1332(d)(4)(A)(i)(II)(cc).........................................................6

28 U.S.C. § 1332(d)(4)(A)(i)(III) .........................................................9, 17

28 U.S.C. § 1332(d)(4)(A)(ii) ...................................................................9

28 U.S.C. § 1332(d)(4)(A)(II)(aa) .....................................................11, 15

28 U.S.C. § 1332(d)(4)(B) ..................................................................16, 17

28 U.S.C. § 1453(c) ............................................................................3, 6

Class Action Fairness Act (CAFA) ................................................*passim*

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 .................................................................4

Cal. Lab. Code § 201 ................................................................................4

Cal. Lab. Code § 202 ................................................................................4

Cal. Lab. Code § 204 ................................................................................4

Cal. Lab. Code § 226(a) ...........................................................................4

Cal. Lab. Code § 226.7 .............................................................................4

Cal. Lab. Code § 510 ................................................................................4

Cal. Lab. Code § 512(a) ...........................................................................4

Cal. Lab. Code § 1198 ..............................................................................4

Cal. Lab. Code Priv. Attys. Gen. Act (PAGA) ........................................4

## SECONDARY AUTHORITIES

109 S.Rpt. 14.........................................................................................22

## STATEMENT OF ISSUES

1.      In determining whether a named defendant is a "defendant… from whom

significant relief is sought" within the meaning of the "Local Controversy

Exception" (28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa)) to the Class Action

Fairness Act codified at 28 U.S.C. § 1332(d) ("CAFA"), must a plaintiff

demonstrate that he actually can collect a significant portion of a potential

judgment from that defendant?

2.      In determining whether a defendant is one "from whom significant relief is

sought," should the district court should look to evidence extrinsic to the

pleadings concerning the defendants' financial capacity to satisfy a potential

judgment?

## STATEMENT OF THE CASE

Plaintiff-Appellee Bradford Coleman  ("Coleman"), a California-based

delivery truck driver, brought suit alleging violations of state wage and hour laws

against Estes Express Lines ("Estes Express") and its wholly owned subsidiary

Estes West, Inc., a California corporation ("Estes West") (collectively the "Estes

Appellants"), on behalf of a putative class of himself and other current and former

employees of Estes West.  (CER 215.)[1]  The Estes Appellants removed this action

---

[1] Because the briefing schedule is extremely truncated and simultaneous,
Coleman is unable to cite to Appellants' Excerpts of Record.  Accordingly,
Coleman has endeavored to provide a full a record in Coleman's Excerpts of

to the United States Court for the Central District of California on March 26, 2010 under CAFA.  (CER 193.)  On Coleman's motion, the district court filed an order on July 19, 2010 remanding this case to the Superior Court for the County of Los Angeles, finding that the case qualified for the Local Controversy Exception to CAFA.  (CER 2.)  In particular, the district court found that Appellant Estes West was a defendant "from whom significant relief is sought" (28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa) [hereinafter "subdivision (aa)"]) and a defendant "whose alleged conduct forms a significant basis for the claims asserted by the proposed class" (28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb) [hereinafter "subdivision (bb)"]).  (CER 28, 30.)

As to subdivision (aa), the Estes Appellants argued that the Local Controversy Exception could not apply unless Coleman could show that Estes West was capable of paying a potential judgment, and submitted extrinsic evidence to try to show that Estes West did not presently have the independent ability to satisfy a potential judgment unless funds were provided by its parent corporation, Estes Express.  (CER 131-166.)  In its analysis of the operative statute, the district court held that the extrinsic evidence submitted by the Estes Appellants of Estes West's present ability to pay a potential judgment was not relevant to the determination of whether Estes West was a defendant "from whom significant

---

Record in the required chronological order, referred to here as "CER__".

relief is sought" under the allegations of the operative complaint.  (CER 26-28.)

Lacking specific direction from this Court as to this statute, the district court

adopted the reasoning and interpretation advanced by the Tenth Circuit in *Coffey v.*

*Freeport McMoran Copper & Gold*, 581 F.3d 1240 (10th Cir. 2009), that the Local

Controversy Exception does not require an inquiry into the defendants' finances.

(*Id.*)

On November 30, 2010, this Court has took a discretionary appeal by the

Estes Appellants under 28 U.S.C. § 1453(c) to determine these questions of

statutory interpretation presented by the Local Controversy Exception to CAFA.

## STATEMENT OF FACTS

Coleman worked for Estes West as a "Pickup and Delivery Driver" from

approximately October 2004 through September 10, 2009.  *See* Plaintiff's First

Amended Complaint ("FAC") ¶ 22 at (CER 227.)

Coleman filed a putative class action in Los Angeles Superior Court on

December 31, 2009 against Estes Express Lines, Inc., a Virginia corporation,

alleging numerous violations of the California Labor Code.  (CER 244.)  On

February 25, 2010, Coleman filed the FAC.  (CER 221.)  On March 10, 2010,

Coleman added "G.I. Trucking Company" as a "Doe" defendant.  (CER 218.)

Defendant answered the complaint on March 25, 2010.  (CER 208.)

The FAC alleges:  (1) unpaid overtime (violation of California Labor Code

§§ 510 and 1198[2]); (2) unpaid meal period premiums (violation of §§ 226.7 and 512(a)); (3) unpaid rest period premiums (violation of § 226.7); (4) failure to timely pay wages upon termination (violation of §§ 201 and 202); (5) failure to timely pay wages during employment (violation of § 204); (6) non-compliant wage statements (violation of § 226(a)); and (7) violation of California Business & Professions Code §§ 17200, *et seq.* (CER 221-43.) Plaintiff also seeks civil penalties pursuant to the Labor Code Private Attorneys General Act of 2004 codified at section 2698 *et seq.* ("PAGA"). (*Id.*)

In the FAC, Coleman seeks to represent two subclasses:

> Unpaid Wages Subclass: All non-exempt or hourly paid employees who worked for Defendants in California within four years prior to the filing of this complaint until the date of certification.

> Non-Compliant Wage Statement Subclass: All non-exempt of hourly paid employees of Defendants who worked in California and received a wage statement within one year prior to the filing of this complaint until the date of certification.

(CER 224.)

Although Coleman did not plead a specific aggregate amount in controversy, he alleged that his individual amount in controversy was less than $75,000. (CER 222.)

---

[2] Unless otherwise noted, all statutory citations to California law refer to the California Labor Code.

On March 26, 2010, after having been served with the FAC, Defendants-Appellants removed this case to the Central District premised solely upon CAFA. (CER 193, 197.)  On April 23, 2010, Coleman filed a motion to remand this action to the Los Angeles Superior Court asserting that CAFA did not apply because, *inter alia*, the action fell within the Local Controversy Exception to CAFA. (CER 167.)

On June 25, 2010, after an opposition and reply had been filed, the district court requested additional briefing relating to the Local Controversy Exception. (CER 85.)  The parties then filed supplemental briefs.  (CER 33-84.)

On July 19, 2010, Judge Collins granted Coleman's motion and remanded this action to the Los Angeles Superior Court based upon the Local Controversy Exception.  (CER 2-32.)

The extrinsic evidence presented by the Estes Appellants concerning the ability of Estes West to pay any potential judgment consisted primarily of two declarations by Brenda Gerczak, Director of Human Resources for Estes Express. (CER 161-166.)  Ms. Gerczak declared that Estes Express purchased G.I. Trucking, Inc. in 2005, which it renamed "Estes West."  (CER 162, ¶ 3.)  Estes West maintains a bank account in California and pays Estes West's employees out of its California payroll account.  (CER 164, ¶ 5.)  Estes West also employs a payroll officer in California.  (CER 164, ¶ 4.)  Ms. Gerczak's testimony in sum is

that Estes Express controls Estes West and makes all policy decisions for Estes West.

Ms. Gerczak does not dispute, however, that Estes West is a California corporation or that it is the actual employer of record for the putative class members in California. (CER 8 n.2,126-130, 192.) As the district court noted, her declaration "takes care to subtly obscure" the distinction between Estes Express and Estes West but does not "disavow Estes West's formal legal identity as a subsidiary of Estes Express." (*Id.*)

## SUMMARY OF ARGUMENT

This Court has taken a discretionary appeal under 28 U.S.C. § 1453(c) to determine (1) whether satisfying the clause "a defendant from whom …significant relief is sought" in the Local Controversy Exception to CAFA requires a demonstration that plaintiff actually can collect a potential judgment from the local defendant,[3] and (2) whether a district court may or should look to evidence extrinsic to the pleadings in making its determination about whether a local defendant meets this criterion. *Coleman v. Estes Express Lines, Inc.*, No. 10-80152, 2010 U.S. App. LEXIS 24434 , __ F.3d.___ (9th Cir. Nov. 30, 2010) (per curiam).

---

[3] For ease of reference, Appellee Coleman will refer herein to a defendant which is as a "citizen of the State in which the action was originally filed" (28 U.S.C. § 1332(d)(4)(A)(i)(II)(cc)) as a "local defendant."

Plaintiff-Appellee Coleman contends that this determination under CAFA's Local Controversy Exception should turn on the allegations within the four corners of a well-pleaded complaint, and should not involve submission by either party of extrinsic evidence about the financial capacity of a local defendant. The Tenth Circuit has already adopted this view in *Coffey v. Freeport McMoran Copper & Gould*, 581 F.3d 1240, 1245 (10th Cir. 2009). Coleman asks that this Court affirm the decision below and adopt the reasoning and decision of the Tenth Circuit.

On appeal, the Estes Appellants contend that the application of this jurisdictional exception should require proof that the local defendant (here, Estes West) actually has the funds to satisfy a potential judgment. Defendants sought below to introduce extrinsic evidence to prove that Estes West would be unable to pay a judgment independently (without infusions of cash from its parent corporation) and argued that this evidence should take the complaint out of the Local Controversy Exception, notwithstanding the allegations of the complaint.

This proposed procedure and interpretation of the Local Controversy Exception under CAFA statute is un-textual, unworkable, and would be bad policy. The text of CAFA does not call for financial analysis to determine, for jurisdictional purposes, whether the local defendant is one "from whom significant relief is sought." (Subdivision (aa)). As the Tenth Circuit noted in *Coffey*, the operative phrase is not "a defendant... from whom significant relief may be

7

obtained." *Coffey*, 581 F.3d at 1245.  The call of subdivision (aa) is to the plaintiff's complaint—to what she is *seeking*—not to the actions of the defendant. This focus on the plaintiff's behavior in the text of this provision is consistent with the general principle that federal removal jurisdiction should be determined with reference to a well-pleaded complaint.  *See Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986).  Thus, the soundest interpretation of subdivision (aa) is that it only requires the district court to examine the allegations of the complaint to determine whether the local defendant is a real target of the lawsuit; it does not call for analysis of the defendants' financial resources.

The Estes Appellants' proposal to focus on the defendants' finances is also bad policy.  First, it will inevitably involve conjecture.  Identifying the culpable defendants among those sued jointly and severally from whom plaintiff may ultimately be able to satisfy a judgment is hard to posit at the outset of any lawsuit, and it can change during the course of litigation.  Experience also teaches that funds can become mobile when the time comes to enforce judgments.   In addition, many defendants, particularly the larger corporate defendants who supported the enactment of CAFA, are reluctant at the outset of litigation to divulge financial information, creating a dilemma in seeking the federal forum CAFA promises.

Moreover, the policy concern that animates the Estes Appellants' position— the fear that a plaintiff will name a non-participatory or shell defendant to evade

8

federal jurisdiction—is mooted by the other strict requirements for CAFA's Local Controversy Exception. Those other requirements are as follows: (1) two-thirds of the class members must be citizens of the state in which the action is filed (28 U.S.C. § 1332(d)(4)(A)(i)(I)); (2) the principal injuries to class members must have occurred within the local defendant's home state (28 U.S.C. § 1332(d)(4)(A)(i)(III)); and, above all, (3) the local defendant must be one "whose alleged conduct forms a significant basis for the claims asserted by the proposed class." (Subdivision (bb)). That latter criterion alone ensures that the local defendant not simply be a peripheral defendant.

Furthermore, the fear that class action plaintiffs regularly will be able to evade CAFA's grant of federal jurisdiction is defeated by another key provision of the Local Controversy Exception that severely limits the frequency of its use. The exception does not apply if "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii). Out-of-state corporate defendants need not fear more than the occasional sojourn into a state court.

The Estes Appellants' proposed interpretation of the Local Controversy Exception would also create many more questions than it answers. For example, with reference to what point in time should a financial evaluation of a local

9

defendant's ability to pay a judgment be made?  Might a district court consider evidence as to the potential future financial state of a local defendant at the time judgment might be rendered?  In evaluating whether the amount of a judgment that a local defendant can afford to pay is "significant," what dollar amount should be used?  Does the analysis of whether "significant relief is sought" from a local defendant change if the out-of-state defendants are also (purportedly) judgment-proof?   The text of CAFA does not suggest answers to these questions.

Furthermore, permitting evidence extrinsic to the pleadings to determine at the outset of litigation whether a local defendant can pay a potential judgment should also bring with it the right to conduct jurisdictional discovery.  *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) ("Discovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted"); *accord Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (vacating dismissal and remanding for discovery on alter ego issues to determine personal jurisdiction).  Without discovery, it is unlikely a plaintiff will possess sufficient evidence to rebut the defendants' claims about the financial capacity of a local defendant.   However, the purpose of CAFA would seem to be undermined by opening up a defendant to additional discovery at the threshold of litigation.  *See United Steel v. Shell Oil Co.*, 602 F.3d 1087, 1090 (9th Cir. 2010) ("Congress passed the Class Action

Fairness Act primarily to curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts."). To interpret CAFA in a way that would necessarily open the door to jurisdictional discovery about corporate finances takes the statute in a way that it could not have been intended to go.

This is the very "factual swamp" that the Tenth Circuit urged in *Coffey* that courts avoid in determining the applicability of the Local Controversy Exception. *See Coffey*, 581 F.3d at 1245. There is no indication that Congress desired to open out-of-state corporate defendants to financial discovery at the outset of litigation.

Finally, even if this Court interprets subdivision (aa) of the Local Controversy Exception as advocated by the Este Appellants, this case nonetheless falls within that interpretation and should still be remanded. Here, Estes West, the local defendant, is not a bit player. Estes West is a corporation in its own right and is the *actual employer* in this employee action alleging violations of California labor laws. Estes West is thus an absolutely necessary local defendant. Accordingly, Estes West is a defendant "from whom significant relief is sought." 28 U.S.C. § 1332(d)(4)(A)(II)(aa). By contrast, Estes Express is merely the parent corporation.

For all these reasons, the decision below should be affirmed in all respects.

11

## STANDARD OF REVIEW

Issues of statutory interpretation are reviewed de novo. *Beeman v. TDI Managed Care Servs.*, 449 F.3d 1035, 1038 (9th Cir. 2006). Factual determinations by the district court are reviewed under a "clearly erroneous" standard. *R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 937 (9th Cir. 2007). The Court may affirm the district court's judgment on any ground supported by the record. *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003).

## ARGUMENT

## I.    REMOVAL STATUTES SHOULD BE CONSTRUED NARROWLY WITH FOCUS ON THE ALLEGATIONS IN THE PLEADINGS

The CAFA statute is known to present particular interpretive challenges. *See Abrego v. Dow Chem. Co.*, 443 F.3d 676, 682 (9th Cir. 2006); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1198 (11th Cir. 2007) ("CAFA's mass action provisions present an opaque, baroque maze of interlocking cross-references that defy easy interpretation."). Nonetheless, the charge of statutory interpretation is clear: "Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous. We must presume that words used more than once in the same statute have the same meaning." *Boise Cascade Corp. v.*

12

*United States EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991) (citations omitted).

These principles of statutory interpretation confirm the district court's interpretation and application of subdivision (aa).  The trial court properly did not consider evidence of whether a local defendant could afford to pay a potential judgment.

Above all, CAFA is a removal statute.  This has two implications for interpreting CAFA.  First, "removal statutes are strictly construed against removal jurisdiction."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  CAFA did not alter that principle.  *See Abrego*, 443 F.3d at 685 (9th Cir. 2006).  Thus, the Court should favor a construction of jurisdictional statutes that narrows the scope of the grant of jurisdiction.  While this does not necessarily mean that exceptions in removal statutes, such as the Local Controversy Exception, should always be read as broadly as possible, it does weigh against an interpretation that would minimize exceptions or place substantial new evidentiary burdens on the party seeking remand with respect to those exceptions.

Second, the general practice in handling removal statutes is to determine jurisdictional questions by looking at the pleadings.  *See Pan Am. Petroleum Corp. v. Superior Court of Del.*, 366 U.S. 656, 663 (1961) ("It is settled doctrine that a case is not cognizable in a federal trial court, in the absence of diversity of citizenship, unless it appears from the face of the complaint that determination of

13

the suit depends upon a question of federal law."); *see also Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) ("We now conclude that notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings[.]")

While jurisdictional facts are more often litigated in traditional diversity cases, a number of aspects of CAFA have also been interpreted in this fashion. Notably in *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 999 (9th Cir. 2007) this Court held that the burden of proof for a defendant as to the amount in controversy depends upon what the plaintiff pleads. Where a plaintiff affirmatively pleads an amount in controversy less than the $5 million requirement under CAFA, this allegation may be overcome only if defendant can show "to a legal certainty" that a greater amount is at stake. *Id.* at 999-1000.

In framing a test for district courts to apply the Local Controversy Exception, therefore, it is consistent with federal practice to (1) establish a test that can be applied strictly, and, (2) use the pleadings as the touchstone for determining removal jurisdiction.

This is how the district court proceeded here, looking chiefly to the allegations in the complaint to determine the applicability of the Local Controversy Exception. The provision at issue under CAFA reads that "a district court shall decline to exercise jurisdiction . . . over a class action in which . . . at least 1

14

defendant is a defendant . . . from whom significant relief is sought by members of the plaintiff class . . . ." 28 U.S.C. § 1332(d)(4)(A)(II)(aa) (emphasis added). This provision, phrased in terms of determining the party from whom plaintiff is *seeking relief*, should be determined foremost by an analysis of the pleadings to see whether the local defendant is one charged with significant liability.

Accordingly, extrinsic evidence may be introduced into this jurisdictional question for only the same limited purpose it is normally introduced, to challenge directly allegations of the complaint on jurisdictional facts. *E.g.*, *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (amount in controversy); *Schnabel v. Lui*, 302 F.3d 1023, 1032 (9th Cir. 2002) (citizenship of parties). In this context, extrinsic evidence could be introduced to show that the local defendant is not properly named or a "sham" defendant. Financial analysis, however, is not called for.

## II.   ANALYSIS OF THE DEFENDANTS' RELATIVE ABILITY TO PAY A JUDGMENT IS NOT INDICATED BY THE STATUTORY TEXT

Nowhere does the Local Controversy Exception explicitly call for assessing each defendant's actual or potential ability to pay a final judgment. Nor does the remainder of the text of CAFA favor such an implied requirement. However, the remaining text of CAFA clearly demonstrates by way of comparison that no financial analysis should be required with respect to the "local defendant" showing of the Local Controversy Exception.

15

There are three related exceptions to CAFA jurisdiction that can be read together to understand the meaning of the Local Controversy Exception: Section 1332(d)(3), 1332(d)(4)(A) [at issue here], and 1332(d)(4)(B). A comparison of these competing provisions of CAFA is instructive. *See generally Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007) (comparing these provisions and construing them together).

Section 1332(d)(3) provides a district court with bounded discretion to decline jurisdiction where greater than one-third but less than two-thirds of all plaintiff class members are citizens of the state in which the action was filed, so long as "the primary defendants" are citizens of that state and other factors listed weigh in favor of allowing the case to proceed in state court. Among those factors is whether the forum has a "distinct nexus" to the harms caused (§ 1332(d)(3)(D)) and whether similar class actions have been filed within the prior three years (§ 1332(d)(3)(F)). In contrast, Section 1332(d)(4)(B)[4] is mandatory, and requires a court to decline jurisdiction where at least two-thirds of the plaintiff class members are citizens of the state where the action was filed and the "primary defendants" are also citizens of the same state.

The Local Controversy Exception is in the middle of these two poles. Like Section 1332(d)(4)(B), it is mandatory and requires that two-thirds of the plaintiff

---

[4] Section 1332(d)(4)(B) is a part of the Local Controversy Exception inapplicable here.

class members be citizens of the state where the action was filed, but it removes a requirement that "primary defendants" be citizens of the state where the action is filed, provided at least one defendant meets a set of criteria that are similar to the discretionary factors in Section 1332(d)(3), including:  (1) the principal injuries to class members must have occurred within the local defendant's home state (28 U.S.C. § 1332(d)(4)(A)(i)(III)); (2) the local defendant must be one "whose alleged conduct forms a significant basis for the claims asserted by the proposed class"; and (3) that the local defendant be one "from whom significant relief is sought." The drafters of CAFA also repeatedly used the term "primary defendant" (28 U.S.C. § 1332(d)(3), (d)(4)(B), (d)(5)(A)) but pointedly did not use it in this subdivision (aa) to describe the local defendant.

Comparing these sections strongly suggests that the drafters intended that a lesser showing would be required to determine that a defendant is a "local defendant" under the Local Controversy Exception than that the defendant is a "primary defendant" under the related subsections.  Because there is no indication from statute or case law that any financial analysis is required to show that a defendant is a "primary defendant," it should not be required for the lesser "local defendant" standard.  Estes Express' interpretation of the statute reverses the intention of Congress and makes it harder, not easier, to demonstrate that a defendant is just "local" rather than also "primary."

17

### III. THIS COURT SHOULD FOLLOW THE TENTH CIRCUIT'S ANALYSIS IN HOLDING THAT EXTRINSIC EVIDENCE OF ABILITY OF A LOCAL DEFENDANT TO PAY A JUDGMENT IS NOT RELEVANT TO THE APPLICABILITY OF THE LOCAL CONTROVERSY EXCEPTION

The Tenth Circuit has taken Appellee's view of the matter, which the trial court quoted, as follows:

> The statutory language is unambiguous, and a 'defendant from whom significant relief is sought' does not mean a 'defendant from whom significant relief may be obtained.' There is nothing in the language of the statute that indicates Congress intended district courts to wade into the factual swamp of assessing the financial viability of a defendant as part of this preliminary consideration, which is one of six issues for a court to consider when deciding whether the "local controversy exception" is met.

*Coffey*, 581 F.3d at 1245. (CER 25.) Other courts have followed the reasoning in *Coffey*. *See Rotenberg v. Brain Research Labs LLC*, No. C-09-2914, 2009 U.S. Dist. LEXIS 91335 (N.D. Cal. Sept. 15, 2009); *Powell v. Tosh*, Case No. 5:09-CV-000121, 2009 U.S. Dist. LEXIS 98564 (W.D. Ky. Oct. 21, 2009).

The two cases noted by this Court in its Opinion of November 30, 2010 (*Robinson v. Cheetah Transp.*, No. 06-0005, 2006 U.S. Dist. LEXIS 10129, at *12 (W.D. La. Feb. 27, 2006) and *Green v. SuperShuttle Int'l, Inc.*, No. 09-2129, 2010 U.S. Dist. LEXIS 7456, at *10 (D. Minn. Jan. 29, 2010)) as representing a split of authority should not be followed here.

The *Robinson* court correctly rejected a local defendant, but for the wrong

18

reasons.  The district court in *Robinson* took too narrow a view of the meaning of "a defendant… from whom significant relief is sought."  It stated that, "With an amount in controversy of at least $ 5,000,000, the plaintiffs *will seek most of that relief* from those who are capable of paying it:  the corporate defendants." *Robinson*, at *13 (emphasis added).   However, While there are reasons for determining that the individual defendant in *Robinson* would not have satisfied the Local Controversy Exception, it is not because "most" of the relief would come from other parties.  There is no indication that the term "significant relief" means "most" of the relief in a lawsuit.  That standard is not articulated in subdivision (aa) of the Local Controversy Exception.  Moreover, CAFA refers to the present rather than the future.  Indeed, it calls for the defendant from whom significant relief *is sought,* not the defendant from whom plaintiff *will seek* significant relief.  The difference is not trivial; the present tense emphasizes the pleadings while the future tense, not used in the statute, calls for a prediction or conjecture.

Moreover, there is no indication that the *Robinson* court reviewed extrinsic evidence of Mr. Gaston's ability to satisfy a judgment.  It did not need to.  In *Robinson*, the plaintiff sought to certify a class consisting of all persons and businesses affected by the accidental closing of a bridge in Louisiana when a truck driver struck it.  The plaintiff sued trucking company (Cheetah) the owner of the

tractor-trailer (Kenworth) , and the owner of the payload (Union Pacific) jointly and severally, along with the driver, the hapless Mr. Gaston.  The plaintiff argued that Gaston was a local defendant for the purposes of subdivision (aa) of the Local Controversy Exception.  The *Robinson* court understood from the pleadings alone that Gaston had no real liability.  Although not discussed, the truck driver-employee would also likely be able to disclaim liability under the doctrine of *respondeat superior.*  Further, the *Robinson* court noted that "additional circumstantial evidence" that plaintiffs did not "seek" significant relief from Gaston was that Plaintiff had not even bothered to serve him.  *Id.* at *13.

Similarly, *Green v. SuperShuttle Int'l, Inc.*, No. 09-2129, 2010 U.S. Dist. LEXIS 7456, at *10 (D. Minn. Jan. 29, 2010) does not indicate a real split of authority with the Tenth Circuit.  *Green* relied on *Evans v. Walter Indus.*, 449 F.3d 1159 (11th Cir. 2006) for the determination that "a defendant… from whom significant relief is sought" meant the defendant with the ability to pay the most, but *Evans* in turn relied upon *Robinson*.  *See Evans*, 449 F.3d at 1167.  *Green* is just an echo of the *Robinson* decision.[5]

---

[5] In addition, the facts in *Evans*, upon which *Green* relied, also show that the decision to decline jurisdiction was not dependent on subdivision (aa).  The court in *Evans* found that supposed local defendant (U.S. Pipe) had such an attenuated relationship to the complaint that most putative class members had no claim against it at all:  "The evidence does not indicate that a significant number or percentage of putative class members may have claims against U.S. Pipe, or indeed that any plaintiff has such a claim."  *Id*. at 1167-1168.  In short, the putative local

The Tenth Circuit's analysis in *Coffey* is thus correct in its conclusion that the focus should be on the plaintiff's allegations, not on extrinsic evidence of the defendants' ability to satisfy a judgment. As the *Coffey* court explained, a defendant from whom significant relief *is sought* is not the same as one from whom significant relief *can be obtained*. *Coffey*, 581 F.3d at 1245. The shift in focus urged by the Estes Appellants, from the plaintiff's allegations to the defendant's financial capabilities, is not supported by the text of the statute.

## IV.   APPELLANTS' INTERPRETATION IS NOT SUPPORTED BY THE LEGISLATIVE HISTORY

The Legislative history of the Local Controversy Exception is scant, but what little there is sheds some light on its purpose. It seems that Congress was keen to focus the trial court on whether a controversy is really interstate or localized, to ensure that localized controversies could remain in state court. In discussing the Local Controversy Exception, the Senate Report states the following in relevant part:

> Under the second criterion, there must be at least one real local defendant. By that, the Committee intends that the local defendant must be a primary focus of the plaintiffs' claims--not just a peripheral defendant. The defendant must be a target from whom significant relief is sought by the class (as opposed to just a subset of the class membership), as well as being a defendant whose alleged conduct forms a significant basis for the claims asserted

defendant (U.S. Pipe) failed subdivision (bb) also, because its alleged conduct was not a significant basis for liability.

> by the class. For example, in a consumer fraud case alleging that an insurance company incorporated and based in another state misrepresented its policies, a local agent of the company named as a defendant presumably would not fit this criteria. [sic] He or she probably would have had contact with only some of the purported class members and thus would not be a person from whom significant relief would be sought by the plaintiff class viewed as a whole. Obviously, from a relief standpoint, the real demand of the full class in terms of seeking significant relief would be on the insurance company itself. Similarly, the agent presumably would not be a person whose alleged conduct forms a significant basis for the claims asserted. At most, that agent would have been an isolated role player in the alleged scheme implemented by the insurance company.

109 S.Rpt. 14 (Exhibit D to Request for Judicial Notice pp.240-41.)

The operative phrase used by the Senate Report is "one real local defendant" who is "not just a peripheral defendant." Notably, the Senate Report does not mention the presence of non-local defendants with deeper pockets as a reason, by itself, to retain federal jurisdiction. It also does not suggest relative weighing of financial wherewithal. What matters for the Local Controversy Exception is whether there is "one real local defendant"—no matter who else is named in the suit. Certainly determining which defendant can pay the *most*, as the *Robinson* court interpreted the statute, does not appear to be what Congress intended.

Unfortunately, the Senate Report quoted here conflates subdivisions (aa) and (bb) in its examples of how to apply the Local Controversy Exception, making its comments difficult to interpret with respect to subdivision (aa) alone. Nonetheless,

two things stand out from this report. First, the emphasis in the Senate Report is on the plaintiff's intentions—whether a defendant is the plaintiff's *target* and the focus of the plaintiff's claims. This plaintiff-centric focus is consistent with removal jurisdiction generally and contrary to the statutory interpretation favored by the Estes Appellants. Second, the examples cited suggest that a major concern of subdivision (aa) was to eliminate from consideration a local defendant whose contact with the class was *quantitatively* insignificant—such as the hypothetical insurance agent whose only contact would be with the class representative. The question posed in determining whether a defendant is one "from whom significant relief is sought" is apparently whether a defendant is *peripheral* or *central*, whether he or she is an "isolated role player." Such an inquiry also focuses on the roles ascribed to the defendants in the allegations of the complaint, not on extrinsic factors such as a defendant's ability to pay a judgment.

What is missing from the Senate Report or the statute is any specific mention of a defendant's ability to pay a judgment as being a key factor in the application of the Local Controversy Exception, let alone the primary factor. It would have been a simple matter for the statute to have provided that a local defendant be able to satisfy a significant portion of the amount in controversy, or be the defendant best able to satisfy a judgment. Congress did not so provide. Thus, the legislative history does not favor an interpretation of the statute that

would open up the question of each defendant's financial capacity to bear a judgment as a threshold jurisdictional matter. It favors the district court's approach taken here.

## V. CALIFORNIA LAW PRECLUDES A CORPORATION PIERCING ITS OWN CORPORATE VEIL TO EVADE JURISDICTION IN CALIFORNIA COURTS

Another important issue is the manner in which the Estes Appellants sought to marginalize the role of Estes West for jurisdictional purposes. The issue of whether Estes Express is a defendant "from whom significant relief is sought" appears closer than it really is because Estes West is a wholly owned subsidiary of Estes Express, and because the Estes Appellants attack their own corporate forms.

Nonetheless, Estes West is separate from Estes Express in the ways that matter. The Estes Appellants have sought to obscure the fact that Estes West is a California corporation and, therefore, a person in its own right. *See Citizens United v. FEC*, 130 S. Ct. 876, 972 (2010); *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 327 (S.D.N.Y. 2003) ("the notion of corporate personhood has long been a settled convention in our law"). The district court noted with disapproval that Estes Express "takes care to subtly obscure the formal corporate distinction between Estes Express and Estes West." (CER 8 n.2, 161-166.)

The district court correctly understood that the Estes Appellants were

24

seeking to pierce their own corporate veil to obtain a jurisdictional benefit, which is normally impermissible. (CER 20, *quoting Disenos Artisticos E Industriales, S.A. v. Costco Wholesale Corp.*, 97 F.3d 377, 380 (9th Cir. 1996) ("Generally, the corporate veil can be pierced only by an adversary of the corporation, not by the corporation itself for its own benefit… [because] a corporation is not entitled to establish and use its affiliates' separate legal existence for some purposes yet have their separate corporate existence disregarded for its own benefit against third parties.")); *United Continental Tuna Corp. v. United States*, 550 F.2d 569, 573 (9th Cir. Cal. 1977) ("[A]ppellant is seeking to pierce its own veil for its own benefit. Appellant has cited no authority and we have found none which allows such a procedure.").

Furthermore, the Estes Appellants are asserting an erroneous interpretation of California's "alter ego" doctrine. The Estes Appellants aver that each is the "alter ego" of the other, as if that could be a permanent status under corporate law. (CER 160.) However, under California law, the alter ego doctrine does not permit one corporation to be deemed merged into another for all purposes. Rather, piercing the corporate veil is an issue-specific, equitable determination, as the California Supreme Court has explained:

> [T]he corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require. To apply the alter ego theory as the federal district court did [ ] misinterprets the doctrine and

25

> ignores the policies behind it. It is not that a corporation will be held liable for the acts of another corporation because there is really only one corporation. Rather, it is that under certain circumstances a hole will be drilled in the wall of limited liability erected by the corporate form; for all purposes other than that for which the hole was drilled, the wall still stands.

*Mesler v. Bragg Management Co.*, 39 Cal. 3d 290, 301 (1985).

Thus, the question for this Court is not whether the corporate form of Estes West can be *generally* disregarded, but whether equity requires it in this *specific* case.

In California, two conditions must be met before the alter ego doctrine will be invoked to disregard the corporate form in a particular instance. First, there must be "such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000). Second, "there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Id*.

The second prong cannot be satisfied here. Remaining in a state court that properly exercises personal and subject matter jurisdiction here is not, without more, an "inequitable result." *See*, *e.g.*, *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1282 (11th Cir. 2001) (holding without a showing that remand was "inequitable," new law on subject matter jurisdiction could be retroactively

applied.).  The Ninth Circuit has permitted piercing the corporate veil in California only when the "inequitable" prong is satisfied—and never by the corporation itself to obtain a perceived advantage.  *See*, *e.g.*, *Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (allowing plaintiff to make alter ego showing against corporate defendants for purposes of asserting personal jurisdiction over them to avoid inequitable result).  Indeed, defendant never sought to make such a showing of inequitable result below.

Accordingly, this Court should not disregard the corporate form of Estes West as part of its determination of whether the Local Controversy Exception applies.  If this Court evaluates Estes West as a corporation in its own right who is the actual employer of record in this case alleging violations of the California Labor Code, it cannot but find that it is a defendant "from whom significant relief is sought" no matter how its finances are dictated by its position as a wholly owned subsidiary of Estes Express.

## VI.  REGARDLESS OF THE STATUTORY INTERPRETATION ADOPTED, THIS COURT SHOULD AFFIRM BECAUSE ESTES WEST IS NOT A PERIPHERAL DEFENDANT

The allegations show that Estes West is not a "peripheral defendant" or an "isolated role player."  (*See* Exhibit D to Request for Judicial Notice pp. 240-241). Every plaintiff here has his or her most direct claims against their employer, local defendant Estes West, a California corporation.  (CER 126-130.)

27

There is no dispute that Estes West is a California corporation, and thus a California Citizen.  (CER 19, 20.)  Estes West is a registered business entity (Business Entity Number C0824623) in California's jurisdiction according to the California Secretary of State database.  (CER 192.)

Further, the repeated argument that Estes Express controls every facet of policy and business at Estes West does not necessarily establish liability for Estes Express.  Indeed, whether Estes Express could be held jointly and severally liable for the Labor Code violations committed by its subsidiary could have been a substantial question here, if Estes Express had not conceded it.

Here, Estes West was initially a separate California company called "G.I. Trucking" which was then purchased by Estes Express Lines, Inc. and operated under the name Estes West.  (CER 6, 126-131, 192.)  Estes West employs California employees including a vice president (CER 8), a human resource manager who "gives the day-to-day instructions to employees" and enforces company policies and procedures.  (CER 7.)  The district court also noted that Estes West maintains its own employee handbook.  (*Id*.)  Additionally, Estes West maintains its own California bank account from which it pays Estes West employees.  (CER 8.)

These are not trivial items.  They are the basis for liability, and they are the reason why it is correct to conclude that Plaintiff seeks "significant relief" from

28

Estes West within the meaning of the Local Controversy Exception to CAFA.

## CONCLUSION

As the Tenth Circuit held in *Coffey*, the Local Controversy Exception applies to a defendant from whom significant relief *is sought*, not one from whom significant relief *may be obtained*.  The jurisdictional analysis under the Local Controversy Exception should be addressed to the liability alleged and the relief sought, and does not require or permit the introduction of extrinsic evidence as to the ability of a local defendant to actually bear the cost of a potential judgment. The district court's remand order should be affirmed.


Dated:  December 20, 2010              Respectfully submitted,

                                       Initiative Legal Group APC


                             By: /s/ Darrel Menthe_____ _
                                 Darrel Menthe
                                 Mark P. Estrella
                                 David M. Medby
                                 Sue J. Kim

                                 Attorneys for Plaintiff-Appellee
                                 Bradford Coleman

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, I hereby certify that the attached answering brief is proportionately spaced, has a 14-point typeface and consists of 6825 words.

The paper copies of this brief are identical to the electronic copies being filed via ECF with the Court.

Dated:  December 20, 2010                   Respectfully submitted,

                                            Initiative Legal Group APC


                              By: /s/ Darrel Menthe_____
                                  Darrel Menthe
                                  Mark P. Estrella
                                  David M. Medby
                                  Sue J. Kim

                                  Attorneys for Plaintiff-Appellee
                                  Bradford Coleman

30

## STATEMENT OF RELATED CASES

Appellee Bradford Coleman states that there are no related cases pending in this Court.

Dated:  December 20, 2010                Respectfully submitted,

                                         Initiative Legal Group APC


                                    By: /s/ Darrel Menthe_____
                                         Darrel Menthe
                                         Mark P. Estrella
                                         David M. Medby
                                         Sue J. Kim

                                         Attorneys for Plaintiff-Appellee
                                         Bradford Coleman

31

# <u>CERTIFICATE OF SERVICE</u>

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

I am employed in the County of Los Angeles.  I declare that I am over the age of eighteen (18) and not a party to this action.  My business address is: Initiative Legal Group APC, 1800 Century Park East, Second Floor, Los Angeles, California 90067.

On December 17, 2010, I served the within documents described below as:

    **1. APPELLEE'S OPENING BRIEF**
    **2. APPELLEE'S REQUEST FOR JUDICIAL NOTICE IN**
       **SUPPORT OF APPELLEE'S OPENING BRIEF**
    **3. APPELLEE'S EXCERPTS OF RECORD**

on the interested parties in this action by placing true copies thereon enclosed in sealed envelopes addressed as follows:

## SEE ATTACHED SERVICE LIST

(X)  **PERSONAL SERVICE:**  I caused the above-referenced documents to be delivered, enclosed in a sealed envelope, by hand to the offices of the addressee(s) named herein.

(X)  **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

**EXECUTED** this document on December 17, 2010, at Los Angeles, California.

By: /s/ Matthew Aguirre_____
        Matthew Aguirre

# SERVICE LIST

David L. Woodard
Poyner & Spruill LLP
Suite 1900
301 Fayetteville Street
Raleigh, NC 27601
(*Counsel for Defendants-Appellants
 Estes Express Lines, Inc., et al*)

David Lee Terry
Poyner & Spruill LLP
Suite 2300
301 South College Street
Charlotte, NC 28202
(*Counsel for Defendants-Appellants
Estes Express Lines, Inc., et al*)

Sarah Drechsler
Carlton, DiSante & Freudenberger LLP
Suite 800
2600 Michelson Drive
Irvine, CA 92612
(*Counsel for Defendants-Appellants
Estes Express Lines, Inc., et al*)

Timothy M. Freudenberger
Carlton, DiSante & Freudenberger LLP
Suite 350
601 Montgomery Street
San Francisco, CA 94111
(*Counsel for Defendants-Appellants
Estes Express Lines, Inc., et al*)